Bernard H. Chao (148,352)
CHAO, HADIDI, STARK & BARKER LLP
770 Menlo Avenue, Suite 205
Menlo Park, CA  94025
Tel:  650.325.0220
Fax: 650-332-1800
*bchao@chsblaw.com*

Rolf O. Stadheim
Joseph A. Grear
George C. Summerfield
Keith A. Vogt
STADHEIM & GREAR
Suite 2200
Chicago, IL  60611
Telephone:  (312) 755-4400
Facsimile:  (312) 755-4408
Email:  *rstadlaw@aol.com*,
*jstadlaw@aol.com*,  *gstadlaw@aol.com*,
*keithvogt@aol.com*

Attorneys for Plaintiff
ALBERTA TELECOMMUNICATIONS
RESEARCH CENTRE d/b/a TR LABS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ALBERTA TELECOMMUNICATIONS RESEARCH CENTRE d/b/a TR LABS,<br><br>Plaintiff,<br><br>v.<br><br>RAMBUS INC.,<br><br>Defendant. | Case No. C 06 02595-RMW<br><br>AMENDED COMPLAINT<br><br>(DEMAND FOR JURY TRIAL) |

The plaintiff, the Alberta Telecommunications Research Center, doing business as TR Labs ("TR Labs"), alleges in the afore-captioned matter as follows:

**BACKGROUND**

**-       TR LABS**

1.      TR Labs is Canada's largest non-profit research consortium with its membership including universities, companies, and government agencies. www.trlabs.ca. TR Labs has offices throughout western Canada, and its principle place of business is 9107 116th Street, Edmonton, Alberta, Canada T6G 2V4.  *Id*.

2.      Among TR Labs' members is the University of Alberta in Edmonton, Canada.  *Id.*

**-       The TR Labs Patent In Suit**

3.      TR Labs is the owner by assignment of U.S. Patent No. 5,361,277, entitled "Method and apparatus for clock distribution and for clock synchronization" ("The TR Labs patent").  TR Labs patent at 1.

4.      The named inventor on the TR Labs patent is TR Labs' Chief Scientist in Network Systems Research, Dr. Wayne Grover.  *Id.*

5.      The TR Labs patent issued on November 1, 1994 based upon an application filed on March 30, 1989, and claiming priority from a Canadian patent application filed April 27, 1988. *Id*.  The Canadian priority application ripened on May 19, 1992 into Canadian Patent No. 1,301,261, having claims substantially identical to the TR Labs patent.  Canadian Patent No. 1,301,261.

6.      The TR Labs patent is cited as prior art in 94 later-issued patents, including 33 owned by defendant, Rambus, Inc. ("Rambus").  *See* www.uspto.gov (patent search database).

7.      Dr. Grover had conceived of the invention of the TR Labs patent by at least May 1987, and had reduced that invention to practice by July 1987.  Draft Disclosure of Invention for Method and Apparatus for Clock Distribution in Distributed Synchronous Equipment Architectures (May 19, 1987) at 1; and Dr. Grover's Technical Drawings.

- **Dr. Wayne Grover**

8. In addition to his position at TR Labs, Dr. Grover is a Professor in the Department of Electrical and Computer Engineering at the University of Alberta in Edmonton, Canada.

9. Dr. Grover is a Fellow of the Institute of Electronic and Electrical Engineers ("IEEE"), a title conferred on those engineers who had demonstrated outstanding proficiency and have achieved distinction in their profession. *See* www.ieee.org. He is also a Fellow of the Engineering Institute of Canada, a title awarded by that organization for similar scientific achievement. *See* www.eic-ici.ca.

10. Among his numerous awards, in 2001-2002, the Natural Science and Engineering Research Council of Canada named Dr. Grover an E.W.R Steacie Fellow, which recognizes highly promising scientists and engineers who are faculty members of Canadian universities. Dr. Grover was awarded the IEEE's 1999 W.R.G. Baker Prize Paper award for the most outstanding paper reporting original work in an IEEE publication, and that same year was named Canada's Outstanding Engineer in Canada by the IEEE. Dr. Grover is the author of "Clocking Schemes," Chapter 63.2, *The Circuits and Filters Handbook*, Editor-in-chief Wai-Kai Chen, CRC Press Inc. 1995, pp. 1951-1992.

- **The Prosecution Of The TR Labs Patent**

11. During prosecution of the application that led to the TR Labs patent, an interference proceeding was declared between that application and U.S. Patent No. 4,998,262 ("the HP patent"). Paper No. 11, App. Ser. No. 07/419,345 (Feb. 11, 1992) The '262 Patent is assigned to Hewlett-Packard. *See* www.uspto.gov.

12. Claims 4-6 of the HP patent were disclaimed by Hewlett-Packard as a result of the afore-referenced interference. Paper No. 13, App. Ser. No. 07/419,345 (Feb. 19, 1993).

13.     Also as a result of the interference, claims 4-6 of the HP patent became claims 52-54 of the TR Labs patent.  *See* TR Labs patent, col. 27, lines 52 – col. 28, line 25.

**-       Rambus**

14.     Rambus is a Delaware corporation with its headquarters at 4440 El Camino Real, Los Altos, California 94022.  *See* www.rambus.com.  Drs. Michael Farmwald and Mark Horowitz founded Rambus in March of 1990.  *In re Rambus, Inc.*, 2004 FTC LEXIS 17 (Fed. Trade Comm'n  Feb. 23, 2004) at *46.

15.     Rambus sells know how for Rambus products based on Rambus patented technology. Rambus describes its products on its world-wide-web home page as follows:

> **Products** – Today's products demand speed. Rambus provides leading chip and system companies with interfaces that enable fast products and fast time-to-market. For networking, computing, and consumer electronics applications, Rambus has developed interfaces that allow you to bypass bottlenecks and ensure
> silicon-proven success. Your license to speed.

http://www.rambus.com/us/products/index.html.

16.     Rambus makes available know-how and other technical assistance in connection with its licensed products and technology.   For example, Rambus provides a validation program for the Direct Rambus Clock Generator through third party test laboratories:

> The Direct Rambus Clock Generator (DRCG) provides the synchronization clocks for the RDRAMs and RAC memory controller.  The DRCG validation program verifies that the clock is compliant to specification parameters such as output jitter, phase errors, operating frequency range, output voltage levels, etc.
>
> Validation testing is conducted by third party test laboratories.  DRCG manufacturers should send the samples directly to the test laboratories.

www.rambus.com.

17.     Rambus' President and CEO, Geoff Tate, is an alumnus of the University of Alberta, as is Rambus' Vice President of Intellectual Property, Kent Richardson, who received an undergraduate degree in computer science from that institution.  *Id.*

-4-

**-      The Rambus Patents**

18.     Rambus purports to be the owner by assignment of U.S. Patent No. 5,243,703, entitled "Apparatus for synchronously generating clock signals in a data processing system" ("the Rambus '703 patent").  Rambus '703 patent at 1.  The Rambus '703 patent issued on September 7, 1993, and claims a priority date of April 18, 1990, based upon App. Ser. No. 07/510,898. *Id* The original application was the cornerstone for many of the subsequent patent applications filed by Rambus, as "the same technical description" as that in the original application is contained in all such subsequently-filed applications.  Tate Trial Tr. at 177:9-179:6, *Rambus, Inc. v. Infineon Technologies AG*, Hearing Vol. IV (E.D. Va. April 25, 2001).

19.     All of the Rambus inventions use a synchronous clock, as it is not possible to build a high speed interface unless it is synchronous.  Horowitz Trial Tr. at 52:20-53:1, *Rambus, Inc. v. Infineon Technologies AG*, Hearing Vol. III (E.D. Va. April 24, 2001); *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 17, ¶ 64.

20.     The named inventors on the Rambus '703 patent are Drs. Farmwald and Horowitz. Rambus '703 patent at 1.

21.     Dr. Farmwald only started thinking about the problems allegedly solved by the subject matter of the April 18, 1990 application in 1988, and thereafter thought about the problem for about six months.  Farmwald Hearing Tr. at 8087:2:12, *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Vol. 39 Hearing Transcript.

22.     In order to progress beyond his "initial ideas," Dr. Farmwald realized that he needed the assistance of an expert in circuit design.  Therefore, Dr. Farmwald sought the help of Dr. Horowitz, a former colleague.  *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 10, ¶ 42.

23.     Dr. Farmwald did not start working with Dr. Horowitz until the late spring of 1989. Farmwald Hearing Tr. at 8093:22 & 8094:7, *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Vol. 39 Hearing Transcript; *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 11, ¶ 44.

24.     Drs. Farmwald and Horowitz did not have a complete set of ideas until early 1990. Horowitz Hearing Tr. at 8514:3-7, *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Vol. 40 Hearing Transcript; *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 19, ¶ 72.

- **Rambus' Licensing Efforts**

25.     Rambus is a pure-play licensing company; it does not manufacture DRAMs, but rather uses research and development to invent new DRAM technologies and makes its money by licensing its technology to others.  *In re Rambus, Inc.*, 2004 FTC LEXIS 17 (Fed. Trade Comm'n  Feb. 23, 2004) at *46.

26.     For the Rambus founders, "the only possible business model that made any sense was to patent it, convince others to build it, and charge them royalties.  *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 12, ¶ 46.

27.     The Rambus 1989 draft business plan stated that "Rambus technology provides several strong barriers to entry for potential competitors, the strongest of which are its patents and the overwhelming 'unfair' advantage its technology enjoys."  *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 14, ¶ 54.

-6-

28. Rambus has represented that its technologies are technologically and economically superior to available alternatives. *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 306-08, ¶¶ 1246-58.

29. Rambus has represented that its royalty rates are reasonable. *In re Rambus, Inc.*, Docket No. 9302, U.S. Fed. Trade Comm'n, Respondent Rambus Inc.'s Proposed Findings of Fact and Conclusions of Law at 330-38, ¶¶ 1371-1404.

30. For the fiscal year that ended on September 30, 2001, Rambus reported revenues of approximately $ 117 million. *In re Rambus, Inc.*, 2004 FTC LEXIS 17 (Fed. Trade Comm'n Feb. 23, 2004) at *46. In 2001, Rambus was projecting a year-end market share for its Rambus DRAM technology of 10%, and an ultimate market share of 50%, once it became the industry standard. Tate Trial Tr. at 66:21-67:18, *Rambus, Inc. v. Infineon Technologies AG*, Hearing Vol. IV (E.D. Va. April 25, 2001).

31. The Rambus '703 patent, which describes "many important attributes of the Rambus synchronization design, including their bus architecture, clocking scheme, and I/O interface," is part of the portfolio from which Rambus derives its royalty income, discussed above. *Patently Obvious*, Intellectual Property Analysis of Rambus, Inc. Patents (Feb. 23, 2001) at 4.

32. Also part of the Rambus licensing portfolio are other patents derived from the '898 patent application, including U.S. Patent No. 5,954,804 (the "Rambus '804 patent").

33. Rambus has entered into license agreements for its patented technology with a number of integrated circuit chip manufacturers from around the world, including many of the major DRAM manufacturers. See www.rambus.com; Tate Trial Tr. at 40:5-8, Rambus, Inc. v. Infineon Technologies AG, Hearing Vol. IV (E.D. Va. April 25, 2001). These licensees include Sony

1  Computer Entertainment, Inc.  Id.  Other licensees include: Samsung, Intel, Panasonic, Texas

2  Instruments, SONY, Toshiba and Hitachi.  http://www.rambus.com/us/products/rdram/

3  34.     In describing its licensing, the Rambus world-wide-web home page states:

>   Licensing - Rambus licenses both its broad portfolio of patented innovations, and its leadership and industry-standard chip interface products. For implementation of its chip interface products, Rambus provides engineering services to ensure its technologies are successfully integrated into customers' chip and system products.

http://www.rambus.com/us/patents/licensing/index.html

35.     In describing licensing options, the Rambus world-wide-web home page states:

>   Rambus provides a number of licensing options from licensing its entire portfolio of patents to licensing individual interface products (cells). Customers can choose the level of engineering services needed to incorporate Rambus technologies into their semiconductor and system designs. … For customers who prefer to design their own interface or who wish to incorporate Rambus innovations into their products, Rambus offers licenses to its patents."

http://www.rambus.com/us/patents/licensing/licensing_options.html

36.     In an effort to promote Rambus technology, Rambus engineers have touted the benefits of including dual Direct Rambus RDRAM memory devices in various products, including the Sony PlayStation:

>   For these reasons, the Rambus solution is ideal for applications that demand high memory bandwidth without a need for large memory capacity.  The PlayStation®2 is a good example. It uses 2 RDRAMs in parallel for an aggregate data throughput of 3.2GB/s from only 32 Mbytes of memory.

Secker, D., *et al.*, *Design of a 3.2 GB/s Memory Sub-System for Playstation®2*, 2001 High-Performance System Design Conference at 4.

**COUNT I – INTERFERENCE PURSUANT TO 35 U.S.C. § 291**

37.     TR Labs hereby incorporates by reference paragraphs 1-36, above.

38.     Claim 1 of the TR Labs '277 patent renders obvious claims 1, 6, 7, 9, 15 and 19 of the Rambus '804 patent, and *vice versa*.  As such, there is an interference-in-fact between those claims.  The charts attached hereto as Exhibit A, comparing claim 1 of the TR Labs '277 patent to claims 1, 6  7, 9, 15 & 19 of the Rambus '804 patent, evidence the nature of that interference.

-8-

**COUNT II – PATENT INFRINGEMENT**

39.   TR Labs hereby incorporates by reference paragraphs 1-38, above.

40.   Attached hereto as Exhibit B is a claim chart showing how the Rambus products infringe various claims of TR Labs' '277 patent.

41.   Given its licensing of the afore-described subject matter, and the accompanying know-how, as well as other activities, Rambus has directly and indirectly infringed claims of the TR Labs patent.

42.   Upon information and belief, Intel Corporation has used the licensed Rambus technology to infringe directly the claims of the TR Labs patent.

43.   Given that the TR Labs patent is cited in 33 separate patents owned by Rambus, thereby giving notice to Rambus of that patent, and given the interfering nature between the TR Labs and Rambus '703 and '804 patents, Rambus's infringement of the TR Labs patent is willful.

**COUNT III – UNJUST ENRICHMENT**

44.   TR Labs hereby incorporates by reference paragraphs 1-43, above.

45.   Rambus has licensed its '804 patent, the invention of which belongs in actuality to TR Labs.

46.   In licensing its '804 patent, Rambus has derived a benefit from TR Labs, *i.e.*, revenue from licensing patented technology that actually belongs to TR Labs.

47.   It would be unjust for Rambus to retain the revenues it has derived from licensing its '804 patent.

WHEREFORE, TR Labs respectfully requests that this Court:

a)   Order the United States Patent and Trademark Office to assign the interfering claims of the Rambus '804 patents to TR Labs pursuant to 35 U.S.C. § 291;

b) Order the disgorgement to TR Labs of Rambus's profits from its royalty revenues derived from licensing the Rambus '804 patent;

c) Order Rambus to pay TR Labs damages no less than a reasonable royalty to compensate TR Labs for the infringement of the TR Labs '277 patent;

d) Order Rambus to pay TR Labs treble damages for its willful infringement of the TR Labs '277 patent;

e) Order Rambus to pay TR Labs prejudgment interest to compensate TR Labs for its lost use of money to which it was entitled;

f) Order Rambus to pay attorneys fees pursuant to 35 U.S.C. § 285;

g) Order enjoining Rambus from any further licensing activity of the Rambus '804 patent, disseminating promotional literature concerning the Rambus '804 patent, and affirmatively requiring Rambus to provide a statement to its licensees and the public that it is not the owner of the claims of the invention of the Rambus '804 patent;

h) Order enjoining Rambus from further infringement of the TR Labs '277 patent and the assigned claims from the Rambus '804 patent; and

i) Award whatever additional relief the Court finds just and equitable.

**TRIAL BY JURY DEMANDED**

Dated:  November 8, 2006

By:  /S/
Bernard H. Chao (148,352)
CHAO, HADIDI, STARK & BARKER LLP
770 Menlo Avenue, Suite 205
Menlo Park, CA  94025
Tel:  650.325.0220
Fax: 650-332-1800

-10-

|     |                                                              |
| --- | ------------------------------------------------------------ |
| 1   |                                                              |
| 2   | Rolf O. Stadheim                                             |
|     | Joseph A. Grear                                              |
| 3   | George C. Summerfield                                        |
|     | Keith A. Vogt                                                |
| 4   | STADHEIM & GREAR                                             |
|     | Suite 2200                                                   |
| 5   | Chicago, IL  60611                                           |
|     | Telephone:  (312) 755-4400                                   |
| 6   | Facsimile:  (312) 755-4408                                   |
|     | Attorneys for Plaintiff                                      |
| 7   | ALBERTA TELECOMMUNICATIONS                                   |
|     | RESEARCH CENTRE d/b/a TR LABS                                |

-11-